FILED
 2016 Aug-12  PM 03:39
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JERRY WHITE STRONG, JR.,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:15-cv-0767-RDP |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Jerry White Strong, Jr. brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits. *See also*, 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

Plaintiff protectively filed an application for SSI benefits on September 10, 2012, alleging disability onset of January 2, 2012. (R. 16, 127). Plaintiff's application was initially denied on January 15, 2013. (R. 61-62). Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). On December 18, 2013 the ALJ held a video hearing where Plaintiff appeared in Birmingham, Alabama and the ALJ presided over the hearing from St. Louis, Missouri. (R. 33). A vocational expert, Barry J. Brown, testified at the hearing. (R. 55-60).

The ALJ returned a decision on January 28, 2014. (R. 13-30). The ALJ found Plaintiff was not disabled under section 1614(a)(3)(4) of the Social Security Act. (*Id.*). Plaintiff requested the Appeals Council to review the ALJ's decision, but the Appeals Council denied that request. (R. 7-9). On April 6, 2016, the Appeals Council set aside its initial denial to consider additional evidence. (R. 1). However, after considering that additional evidence, the Social Security Administration once again denied review of the ALJ's decision. (R. 1-4).

## II.     Facts[1]

Plaintiff was forty-seven when the ALJ rendered her decision, and was considered a "younger individual" at that time. (R. 25). Plaintiff is supported by his parents and a long-term roommate. (R. 38). Plaintiff has a high school education (*id.*), and past work experience as a policyholder information clerk, customer complaint clerk, and a general merchandise salesperson. (R. 57). Plaintiff has not worked since May 2010 (R. 43), and claims to have left his most recent job due to anxiety, depression with respect to a fear of crowds, panic attacks, and a deformed right hand that he is unable to use in public. (R. 63). However, Plaintiff's records indicate that he left his job due to the employer's failure to pay him. (R. 44). Plaintiff also alleges that he experiences paranoia, senses that people are looking at his deformed right hand, and as a result he cannot use the deformed hand out of fear. (R. 63). Plaintiff also has a fear of using public restrooms. (R. 63). As a result of Plaintiff's embarrassment and fear of using a public restroom, he alleges that he avoids meetings (and other gatherings) that are longer than an hour. (R. 265). However, Plaintiff has indicated that his fear of restrooms and crowds is not necessarily a result of his hand; even when his hand is hidden in his pocket, he still has anxiety. (R. 46).

---

[1] This court notes that the Memorandum in Support of Commissioner's Decision contained a description of the "Administrative Proceedings" and a "Statement of Facts" which are inconsistent with the Record and clearly relate to another plaintiff, not Jerry White Strong, Jr. (Doc. 11 at 1-2).

Although Plaintiff's hand is deformed, he is able to tie his shoes, perform basic functions, and use a computer. (R. 40). The presentation of the hand is a bigger source of discomfort for Plaintiff than his actual inability to use the hand. (*Id.*).

Plaintiff is able to perform personal grooming, cook, perform chores, shop online, attend church, paint, play piano, and house-hunt. (R. 66). Plaintiff takes care of pets by feeding and playing with them. (R. 187). As one would expect, Plaintiff is left-handed, so he is able to perform tasks that do not involve his deformed right hand. (R. 66). He is also able to lift, squat, bend, stand, reach, walk, sit, and see. (*Id.*).

Plaintiff began employment with Bell South Mobility around 2000-2001, and worked in customer service. (R. 50). While there, Plaintiff answered incoming calls, used a computer, and made collection calls. (R. 51). Plaintiff claims that it was at that point he realized the extent of his anxiety; he was using his hand in public where others could see it. (R. 41). Plaintiff then went to work at AT&T, also as a customer service representative, performing tasks similar to those he performed at his last job. (R. 52). Next, Plaintiff worked at Blue Cross Blue Shield. (R. 52). There, Plaintiff provided information on patient benefits to medical providers. (R. 52-53). He was mostly sedentary and would answer and make calls. (R. 53). Once again, while working for Blue Cross, Plaintiff felt the need to leave because, in an environment where people could view his hand, he was using his hand to type on a keyboard and use a mouse. (R. 44).

Plaintiff claims that it was while he was working at AT&T that he began experiencing "bathroom phobia." (R. 45). He fears using a bathroom that is not completely private. (R. 44). According to Plaintiff, if the restroom was not empty, he would be unable to use it (R. 44), and he would then have to find another restroom on another floor. (R. 45). He claims that as a result, his work suffered due to the amount of time he spent looking for an available, empty restroom.

(R. 45). This particularly affected his work at both AT&T and Blue Cross, because his performance was related to the amount of time he spent working on the phone. (R. 53). He claims he left the jobs at AT&T and Blue Cross because he feared impending disciplinary action. (R. 53-54). Plaintiff's final job was at a computer store, Christian LLC. (R. 54). There, he performed tasks related to clerical work, customer service, and computer repair. (R. 54). He left that work due to the nature of the job; when the other employees would leave the store, he would be left to deal with customers personally, which was a source of anxiety for him. (R. 43-44).

Plaintiff alleges he became unable to work as of January 2, 2012. (R. 63). Plaintiff has sought treatment from Dr. Armand Schachter at Grayson and Associates, but Dr. Schachter has only provided medication and adjustment to medication; he has not provided Plaintiff with counseling services. (R. 50). Dr. Schachter prescribed Alprazolam--an anti-anxiety medication-- in addition to various other anti-depressants (including Fluoxetine, Bupropion XL, and Mirtazapine) over the course of about fifteen months. (R. 229-35). Plaintiff asserts that he is unable to work due to his high level of anxiety. (R. 47). He further claims that the only way he could work would be to increase his medicine to a point where he would be unable to adequately perform work functions. (*Id.*).

## III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §

404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his application date. (R. 18).  In addition, the ALJ determined that Plaintiff is severely

impaired by his congenital right hand deformity, social anxiety, specific phobia, panic disorder without agoraphobia, and major depressive disorder. (*Id.*). However, at the third step in the analysis, the ALJ found that Plaintiff's impairments do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). In making this determination, the ALJ first found that Plaintiff's congenital hand deformity does not cause chronic joint pain and stiffness as required by Listing 1.02, nor does the loss of Plaintiff's three middle fingers constitute an absence of both hands or one hand and one lower extremity with the inability to ambulate effectively as required by Listing 1.05. (*Id.*). As such, Plaintiff's congenital hand deformity "does not meet or medically equal the severity of the Listings." (*Id.*).

In determining that Plaintiff's impairments do not meet the medical severity required by the Listings, the ALJ examined Plaintiff's mental impairments and determined that Plaintiff's mental impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (*Id.*). In particular, the ALJ found that at least two of the "paragraph B" criteria -- "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration" -- were not met. (R. 19). A marked limitation is more than moderate but less than extreme. (*Id.*). The ALJ found that Plaintiff has a mild restriction involving activities in daily living. (*Id.*). The ALJ concluded that this finding is consistent with that of Plaintiff's treating psychiatrist. (*Id.*).

Additionally, the ALJ found that Plaintiff experienced moderate difficulties in social functioning. (*Id.*). In support of this finding the ALJ noted that while Plaintiff's treating psychiatrist found marked limitations in his social functioning, the opinions were not supported by the treating psychiatrist's own records. (*Id.*). Instead, the ALJ relied on the State agency

medical consultant's opinion that Plaintiff has only moderate difficulties in social functioning. (*Id.*). In terms of concentration, persistence or pace, the ALJ determined that Plaintiff has only mild restrictions. (*Id.*). Although the treating psychiatrist opined that Plaintiff experienced a marked difficulty in this category, and Plaintiff testified at the hearing that his medicine affects his memory retention, there were only three visits where Plaintiff noted memory impairments. (*Id.*). Additionally, the ALJ emphasized that the treating psychiatrist himself did not make the notes, but rather the nurse appeared to annotate in these areas. (*Id.*). As for episodes of decomposition, the ALJ determined Plaintiff "has experienced no episodes of decomposition, which have been of extended duration." (*Id.*).

Next, the ALJ determined Plaintiff has the residual functioning capacity ("RFC") to perform an array of exertional activities, excluding work involving hazardous machinery, unprotected heights, climbing ladders, ropes or scaffolds, and fingering with the middle three fingers. (R. 20). In considering non-exertional limitations, the ALJ determined Plaintiff may only have superficial contact with supervisors and co-workers; no contact with the public; must work in an environment with infrequent changes, but when necessary, changes should be introduced gradually; and must not work in an environment that has stringent production or speed requirements (*e.g.*, fast paced assembly line work, piece rate work, or quota based work). (*Id.*). In making such a determination, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96.7p. (*Id.*). When making this determination, the ALJ must utilize a two-step process. First, the ALJ must determine:

> whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that can be shown by medically acceptable

7

> clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.

(R. 20-21). The ALJ ultimately found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible. (R. 21). In regards to Plaintiff's congenital hand deformity, the ALJ determined that based on Plaintiff's ability to use his right hand to perform functions such as yard work, washing dishes, computer work, drawing, painting, and driving, Plaintiff has no exertional limitations or fingering limitations, except for limitations of his three middle fingers. (*Id.*).

With respect to Plaintiff's alleged mental impairments, the ALJ found that Plaintiff's treatment records failed to "reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (R. 21-22). The ALJ based this decision on her finding that Plaintiff's treatment records failed to support the severity and frequency of Plaintiff's symptoms. (R. 22).

At the fourth and fifth steps of the analysis, the ALJ relied on the testimony of a Vocational Expert ("VE") in order to determine whether Plaintiff could perform past relevant work and based on Plaintiff's age, education level, work experience, and RFC, whether Plaintiff could perform other jobs. (R. 55-60). The VE acknowledged that based on the ALJ's hypothetical concerning Plaintiff's exertional and non-exertional limitations, Plaintiff would be unable to perform past relevant work. (R. 57). However, the VE also testified that jobs exist in the national economy that Plaintiff would be able to perform, given his limitations. (*Id.*). First, he determined that Plaintiff would be able to work as a cleaner, where approximately 700,000 jobs

are available. (*Id.*). Further, Plaintiff could perform work as a machine tenderer, where there are 100,000 jobs available. (R. 58). And finally, Plaintiff could work as a store laborer where there are at least 10,000 jobs. (*Id.*). However, the quantity of available jobs for each of these three positions would have to be reduced by 50 percent due to Plaintiff's fingering limitations. (R. 57-58). The VE further testified as to Plaintiff's ability to find work that does not have stringent production or speed requirements and fast paced assembly work. (R. 58). The VE testified that there were no jobs available within Plaintiff's RFC range that would allow for an individual to be off task for more than 15 percent of the day. (R. 59).

At the fourth step, the ALJ determined that Plaintiff is unable to perform any past, relevant work. (R. 24). And, at the fifth step, based on Plaintiff's age, education level, work experience and RFC, the ALJ determined that there are jobs available in significant numbers in our national economy that Plaintiff is able to perform. (R. 25).

## IV.     Plaintiff's Argument for Reversal

Plaintiff argues on appeal that substantial evidence does not support the ALJ's mental RFC findings. Specifically, Plaintiff asserts that (1) the ALJ's mental RFC findings are not expressed in vocational terms and do not reflect the limitations indicated in the record (Pl.'s Mem. 6, 11), and (2) the ALJ's findings are inconsistent with the assessment of Plaintiff's treating psychiatrist. (Pl.'s Mem. 9).

## V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42

U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion[2]

After careful review, the court concludes that the ALJ's decision is supported by substantial evidence and is due to be affirmed.

### A.   The ALJ's Mental RFC Findings Do Reflect Limitations in the Record

Despite Plaintiff's claims to the contrary, the ALJ fully accounted for Plaintiff's limitations -- including social phobia, specific phobia, panic disorder, and major depressive order -- when determining Plaintiff's RFC. When considering these limitations, both singly and in

---

[2] Plaintiff has failed to raise certain issues in this appeal that he argued at the administrative level below. Therefore, he has waived those arguments for purposes of this appeal. *See United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (finding that issues not challenged on appeal are deemed abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").

combination, the ALJ determined that Plaintiff has the RFC to perform a full range of work with the non-exertional limitations of working in an environment where Plaintiff has superficial contact with coworkers and supervisors and no contact with the public. (R. 23). Plaintiff must work in an environment where changes are infrequent but when necessary, are introduced gradually. (*Id.*). The environment must not have stringent production or speed requirements. (*Id.*). In reaching this conclusion, the ALJ evaluated Plaintiff's symptoms consistent with objective medical evidence. (R. 20).

The ALJ initially determined that Plaintiff's medical impairments could reasonably be expected to cause his symptoms, but did not find that Plaintiff's statements were entirely credible as to persistence, intensity, and limiting effects of those symptoms .(R. 21). The anxiety and depression Plaintiff has reported are the same symptoms he experienced for several years (*i.e.*, preceding his disability onset date) while he was able to work. (R. 22). Plaintiff claims that he left his previous job as a computer sales associate because his employer failed to pay him. (R. 44). In addition, even after Plaintiff's employer changed his job duties to include social interaction with customers, Plaintiff continued to work in that position for two years without receiving pay. (R. 54, 175). Plaintiff alleges crippling anxiety, yet is able to go out alone, grocery shop, attend church, eat at restaurants, visit art galleries and vacation with family friends. (R. 36-38, 190, 202-03). In addition, he acknowledges that his medication has helped to alleviate some of his symptoms. (R. 281). His treatment has been limited to medication management every few months and does not include therapy. (R. 247, 249-50, 252). The ALJ took all of this information into account in assessing Plaintiff's mental limitations and determined his RFC.

At the next step, the ALJ considered what past relevant work, if any, Plaintiff could perform based on his RFC. The ALJ determined that Plaintiff was unable to perform his past

relevant work as an information clerk, customer complaint clerk, and general merchandise salesperson. (R. 24). Once again, in making this determination, the ALJ looked to Plaintiff's RFC and reasoned that Plaintiff could not work his past jobs because he is unable to make contact with the general public. (*Id.*).

At the final step, the ALJ relied upon the VE's opinion to determine what work, if any, Plaintiff would be able to perform based on Plaintiff's RFC. The VE testified that Plaintiff could perform work as a cleaner with 700,000 jobs nationally (R. 57), a machine tender with 50,000 jobs nationally (R. 58), and a store laborer with 10,000 jobs nationally. (R. 25.). Taking into consideration Plaintiff's non-exertional limitations, the ALJ determined that Plaintiff would be able to perform jobs of a medium, unskilled level of labor that exist in the economy in large numbers. (*Id.*). Therefore, the ALJ concluded that, considering Plaintiff's age, work experience, education, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the United States economy. (R. 25). In making this decision, the ALJ properly considered Plaintiff's alleged ailments, symptoms and activities, and because Plaintiff is capable of performing work despite his exertional and non-exertional limitations, the ALJ was justified in making a determination that Plaintiff is "not disabled." The ALJ's decision is supported by substantial evidence.

Additionally, the ALJ considered Plaintiff's mental impairments to determine Plaintiff's level of functioning in four broad areas. The ALJ used the Psychiatric Review Technique ("PRT") to reach the conclusion that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; mild difficulties in concentration, persistence, or pace; and no episodes of decompensation. (R. 19-20).

The ALJ relied upon substantial evidence to support her analysis of Plaintiff's ability to do work-related activities. In making her determination, the ALJ reviewed Plaintiff's treatment records. In January 2012, Plaintiff reported great embarrassment in using his hand, but had a normal affect, was goal-oriented in thinking, and demonstrated intact cognition. (R. 252). After his April 12 appointment, Plaintiff did not seek treatment for another three months. (R. 247). In July and August 2012, while Plaintiff indicates he was experiencing feelings of anxiety, he was found to have a normal affect and demonstrated goal-oriented thinking. (R. 246-47). In November 2012, Plaintiff reported that he was trying to find a job. (R. 281). In November 2013, Dr. Schachter observed that Plaintiff had no symptoms, an euthymic mood, and an appropriate affect. Also, his thought processes were logical and appropriate. (R. 282-83, 285). In addition, the ALJ considered the consultative examiner's findings, which also constitute substantial evidence in support of the ALJ's mental RFC finding. Thus, contrary to Plaintiff's claims, the ALJ's findings are supported by substantial evidence.

### B. The ALJ Had Good Cause to Afford Little Weight to Dr. Schachter's Opinion

It is well-established in the Eleventh Circuit that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, at 1140 (11th Cir. 1997), *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). Good cause to discount a treating physician's opinion exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, at 1241 (11th Cir. 2004).

In the present case, the ALJ articulated that she afforded little weight to Dr. Schachter because his opinion was inconsistent with his own treatment records, Plaintiff's treatment, and Plaintiff's reported activities. (R. 23-24). Because the ALJ has cited specific reasons why she failed to give Dr. Schachter's opinion controlling weight, and those reasons are supported by substantial evidence, the ALJ did not commit reversible error. *See Weekley v. Comm'r of Soc. Sec.*, 486 F. App'x 806, 808 (11th Cir. 2005) (citing *Moore v. Comm'r of Soc. Sec.*, 405 F.3d 1208, 1212 (11th Cir. 2005)). Dr. Schachter opined Plaintiff had marked limitations in concentration, persistence, and pace; however, the majority of treatment records indicate that Plaintiff had normal thought process and concentration. (R. 246, 252, 254, 267, 280, 282-83). In addition, Dr. Schachter's conservative treatment of Plaintiff is indicative of a non-disabling or non-limiting condition. And, despite Dr. Schachter's opinion that Plaintiff had extreme and marked limitations in the records, Dr. Schachter only prescribed medication, not counseling or therapy.

Moreover, it is not evident that Dr. Schachter relied on any objective evidence in forming his opinion. Rather, he seems to have accepted Plaintiff's subjective statements regarding Plaintiff's self-perception of the state of his own condition. However, a claimant's subjective complaints and conclusions should not be an acceptable basis for a physician's opinion, particularly when a claimant's own actions and medical records counsel against such a conclusion. *See Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 n.3 (11th Cir. 2014) (finding that an ALJ may discount a treating physician's opinion where it "appears to be based primarily on [the claimant's] subjective complaints of pain." (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004))).

Plaintiff's own reports regarding his activities and Dr. Schachter's own treatment of Plaintiff reveal no more than a moderate limitation in social functioning. (R. 275-98). Plaintiff's supposed improvements of condition following treatment also indicate normal thought processes and concentration. (*Id.*). Additionally, Dr. Schachter's opinion is itself internally inconsistent. His own records appear to equate a marked limitation in social functioning with only a moderate or mild limitation with others in the work setting. (R. 273-74).

Finally, Dr. Schachter's opinion that Plaintiff had an extreme limitation in ability to respond to customary work pressures and had marked limitations in social functioning and concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner, is not binding. The final responsibility to determine a claimant's RFC rests with the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2). At the hearing level, that function is delegated to the ALJ. *See* 20 C.F.R. § 404.1546(c). Therefore, while medical source opinions are certainly relevant, and should be considered, they are not determinative. *See* 20 C.F.R. § 404.1527(d).

Here, the ALJ found Dr. Schachter's opinion to be inconsistent with his own treatment records, his treatment of Plaintiff, and Plaintiff's activities. That finding is supported by substantial evidence. The ALJ had good cause to reject Dr. Schachter's opinion, and her determination is supported by substantial evidence.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 12, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE